## INGRAM v. RICHARDSON et al.

To support a plea of *litispendance*, the parties, and the objects of the action, must be identical.

Proof of the pendency of proceedings against executors to enforce a sale of the assets of the succession to pay the claim of a plaintiff, will not support a plea of *litispendance*, in an action to establish the personal liability of the widow, and the liability of the beneficiary heirs, by reason of their acceptance of the succession and community, and of their having taken the property in their possession. C. P. 335.

A widow in community, who has taken the property of the succession into her possession, was suable in courts of ordinary jurisdiction under the organization of the courts anterior to the constitution of 1845; and an action might have been maintained in those courts against minor heirs, represented by their tutrix.

Acceptance of service of a petition and waiver of citation, made by the attorney at law of a defendant, are sufficient.

The word " attorney" in art. 177 of the Code of Practice means attorney at law, and not attorney in fact,

Where, in an action against beneficiary heirs, judgment was rendered against them " as the children of the said R. W. deceased," the whole context of the judgment must be considered in interpreting it; and where, so interpreting it, its legal effect is that of a judgment against them to be satisfied out of their patrimonial estate, it will be considered as such.

```
 2   839
49   735
 2   839
114  552
 2   839
123  860
```

APPEAL from the District Court of Rapidos, *Cushman,* J. *Elgee* and *Hyams,* for the plaintiff. The attorney at law of an executor may accept service of petition and waive citation. C. P. 177. 8 Mart. N. S. 233. The minors, being properly represented on the trial of the cases in which judgments were obtained, their only remedy was by appeal. 4 Mart. N. S. 415. 5 Ib. N. S. 165. 8 Ib. N. S. 233. 7 La. 17, 223. 3 Rob. 69. *Flint* and *Mc-Waters,* for the appellants. The judgment of the court was pronounced by

SLIDELL, J. The plaintiff alleges that, in the year 1842, he obtained judgment against the estate of *Richard Winn,* represented by *Moore* and *Neal,* executors, upon debts contracted by the deceased; that since the rendition of the judgments the executors have delivered up all the estate of *Winn* to his widow, now *Mrs. Richardson,* and her husband *Richardson,* in their own right and as tutrix and co-tutor of *Winn's* minor children. He prays for judgment against the minors *in solido,* and against the widow in community, for the amount of the judgments above mentioned, and for general relief. There was a judgment for plaintiff in the court below, and the defendants have appealed.

INGRAM
v.
RICHARDSON.

The first appearance of the defendants in the cause was by way of exception. They declined answering to the merits, and prayed to be dismissed, on two grounds: *first*, that the District Court was wholly without jurisdiction of the suit; and, *secondly*, the pendency of a suit in the Court of Probates, brought by the plaintiff against the executors, to enforce the payment of the same judgments. The suit in the Court of Probates, to which reference is made in the above exception, was a proceeding in which *Ingram* prayed for an order of that court to the executors, commanding them to sell sufficient property of the succession for cash to pay his claim, and to render an account of their administration. In that suit the executors answered that they had been discharged from their executorship by a decree of the Court of Probates, had rendered an account to the widow and heirs, and in obedience to the decree of the court had surrendered all the property of the succession to them. Upon those issues the Court of Probates dismissed the suit, stating as the ground for its decree that, it appeared to the satisfaction of the court that the executors had been discharged as such, and had surrendered all the property and effects of the succession to the widow and tutrix. From this decree *Ingram* appealed, and the appeal was still pending when this suit was brought.

The exception of *litispendance* is not well taken. The parties, and the object of the actions, are not identical. In the former case it was a proceeding against the executors, to enforce a sale of assets of the succession to pay the plaintiff's claims. In the present, the plaintiff seeks a judgment decreeing the personal liability of the widow, and the liability of the beneficiary heirs, by reason of their acceptance of the succession and community, and of their having taken its property into their possession. See C. P. 335.

As to the jurisdiction of the District Court, it is too clear to admit of any discussion, that the widow in community, who had taken the property of the succession into her possession, was suable in a court of ordinary jurisdiction; and upon the authority of the case of *Saunders* v. *Taylor*, 6 Mart. N. S. 521, the suit could also be maintained there against the minors represented by their tutrix. We may remark that in the present case this question of jurisdiction is practically a mere question of costs; for although the exception was heard and overruled in 1845, the trial of the cause on the merits took place in 1847, before the District Court as organised under the constitution of 1845, and clothed with plenary jurisdiction over minors and successions.

The exception having been overruled the defendants answered. The answer contains no plea of general denial, but is a special plea of the nullity of the judgments obtained in the Probate Court, upon the following grounds : That no citation ever issued to, or was served upon, either of the executors; that neither of them ever authorised any person to acknowledge, or waive, service of citation; and that neither of them ever entered an appearance, or joined issue, in those suits.

The facts material to the decision of the issue thus made are, that *Brent & Ogden*, licensed attorneys and counsellors at law, signed a written acceptance of service and waiver of citation, upon the original petitions of record in those suits. This would of itself suffice. The 177th article of the Code of Practice authorises an attorney to acknowledge service. It is erroneously argued that by "attorney" is there intended an attorney in fact. The french text sets all doubt at rest, by using the expression "*avocat.*" We had occasion in the case of *Conrey* v. *Brenham*, 1 An. Rep. 397, to say that, an acceptance of service

by the attorney of record of a citation of appeal, will be presumed to be authorised by his client, in the absence of contrary proof. We considered the rule as warranted by a consideration of the dignity of the profession, and the necessity, for the convenient administration of justice, that great confidence should be reposed in members of the bar. It is to be remembered, too, that what is done by an attorney at law is done under the solemnity of his oath of office; and the allegation that he has violated his professional duty, by acting for a party without authorisation, ought not to be lightly made.

In the present case, the plaintiff has not thought proper to rest the matter solely upon the acceptance signed by *Brent & Ogden*, but has offered evidence which shows that those gentlemen have not been guilty of a breach of professional duty. *Mr. Brent*, being examined as a witness, says he thinks he spoke to *Moore*, the executor, and that he authorised him to waive service. That if he had no special authority, he had a general authority to represent the executors in all matters connected with the interests of the estate. The testimony of this witness, and of another, satisfies us also that *Mr. Brent* was present when the causes were tried, and the judgments taken, in the Court of Probates. *Moore*, the executor, swears that *Brent & Ogden*, "were fully authorised by him to exercise their own discretion in all legal matters brought either in favor of or against the estate;" that he had entire confidence in them; and that whatever was done by them, in the capacity of attorneys, received his sanction, although he does not recollect if he gave them special authority to waive service in these particular cases. This witness also states his belief that he promised to pay these judgments; and this statement is corroborated by another witness, who declares that *Moore*, as executor, often promised to pay the judgments; but begged indulgence until a crop could be made. At his solicitation suits were brought, and judgments obtained, against the parties primarily liable upon the obligations endorsed by *Winn*, and upon which the judgments against his succession were obtained. *Richardson* also solicited that execution should be issued against those parties.

As to the objection that the judgments were rendered without appearance or issue joined by the executors of *Winn*, it is entitled to no weight. Judgments by default were duly entered, and the causes were tried in the presence of the counsel of the executors. If there were any informalities on this score between citation and decree, the decrees cured them. We cannot now look behind the decrees to discover informalities, which, if they existed, should have been examined by appeal.

We are clearly of opinion that the grounds of nullity set forth in this answer, are not only untenable, but frivolous.

There was an amended answer which, like the first, contains no general denial, but a mere special plea, in which a further ground of nullity is alleged. The plea in substance is, that the note and draft upon which the two judgments were obtained, were merely collaterals, or means of payment of a note of *Wright & Robert*, endorsed by *Briggs* and by *Winn*, due in 1839: that the knowledge of this fact rested only with the plaintiffs, after *Winn's* death, and was fraudulently concealed from the heirs and representatives of the succession. The evidence on this point is that, when the new note and draft were given to *Ingram*, the old note, by the agreement of *Ingram, Robert, Wright* and *Winn*, was deposited in the hands of *Ingram's* attorneys, as a collateral security, "not to be given up until the draft and note were paid." A receipt setting forth the

amount was given at the time to *Ingram* by his attorneys, and the old note was retained in their hands as a collateral security. If the parties chose to put the old debt in the new form of a note and draft, and make the old note a collateral security instead of a principal obligation, they had a right to do so, and must be bound by their agreement.

The charge of fraud and malpractice made in this amended answer, is unsupported and unjust. If any one has a right to complain in this litigation it is the plaintiff, who has been struggling for so many years to collect a just debt, and whose efforts up to the present time have been unavailing.

The question is put by the defendants in argument, whether a judgment rendered against executors constitutes evidence against, and is binding upon, the widow in community and heirs. But this question is not raised by the answer, and cannot be considered. The defence was placed in the answer solely upon the nullity of the judgments, setting forth the special grounds of nullity.

Objection is made to the form of the judgment, being, it is said, an absolute judgment. If it be absolute against the wife for one-half of the debt, it is properly so; for she has accepted the community and taken it into her possession, to an amount far exceeding the plaintiff's claim. As to the minors, we do not consider it absolute. It is against them "*as the children of the said Richard Winn, deceased.*" The whole context of the judgment must be considered in interpreting it. So interpreting it, its legal effect is a judgment against the minors, to be satisfied out of their patrimonial estate.

*Judgment affirmed.*